IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE, | :: |
| Plaintiff, | :: CIVIL ACTION NO. |
| v. | :: |
| JAMIE SALAS RUSHFORD, M.D. | :: |
| Defendant. | :: |

## COMPLAINT

Plaintiff, the American Board of Internal Medicine ("ABIM"), by and through its undersigned counsel, as and for its Complaint against Defendant, Jamie Salas Rushford, M.D. ("Dr. Salas"), alleges as follows:

## NATURE OF THE ACTION

1. In August 2009, shortly before taking ABIM's Certifying Examination in Internal Medicine (the "Examination"), Dr. Jamie Salas Rushford unlawfully obtained, copied and disseminated hundreds of secure, copyrighted questions from ABIM's Examination. Dr. Salas provided these questions to Arora Board Review ("ABR"), a New Jersey based test-prep course for physicians seeking Board Certification in Internal Medicine. Dr. Salas had attended the ABR course in May 2009, and registered for the course using the e-mail address bearing his name (jsalasmd@yahoo.com). Dr. Salas provided ABIM's copyrighted Examination questions to ABR in a series of unsigned e-mails sent from a different e-mail address – one that concealed Dr. Salas' identity. ABIM is seeking monetary damages arising from Dr. Salas' knowing and willful infringement of ABIM's copyrighted Examination questions.

DMEAST #12467862

## PARTIES

2. Plaintiff, American Board of Internal Medicine, is an Iowa non-profit corporation, with its principal place of business at 510 Walnut Street, Suite 1700, Philadelphia, Pennsylvania 19106.

3. On information and belief, Dr. Salas presently resides at 559 Calle Cabo H Alverio Ext Roosevelt, San Juan, Puerto Rico 00918.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338.

5. This Court has personal jurisdiction over Dr. Salas because he purposely availed himself of the laws of New Jersey by knowingly and intentionally obtaining, copying and disseminating ABIM's copyrighted examination content into the State of New Jersey, thereby willfully infringing ABIM's copyrighted Examination in New Jersey.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

### The American Board of Internal Medicine

7. Established in 1936, ABIM is an independent, not-for-profit, 501(c)(3)-qualified corporation dedicated to the advancement of excellence in the field of internal medicine and the subspecialties of internal medicine.

8. Board Certification by ABIM is an internationally recognized marker of physician quality for patients, hospitals and other medical care providers. The designation of a physician as "Board Certified" by ABIM means that the physician has demonstrated – to the medical community and the public – that the physician has the clinical judgment, skills, ethics and attitudes essential for the delivery of excellent patient care.

9. Patients, hospitals and other medical care providers trust that physicians who have earned Board Certification from ABIM will provide the highest quality of medical care in their designated specialties.

10. Many hospitals require physicians of internal medicine to be Board Certified in order to have admitting privileges. Many health plans require Board Certification for contracting or eligibility to participate as a physician of internal medicine or the subspecialties in preferred networks.

11. Board Certified physicians often receive higher levels of compensation than non-certified physicians practicing in the same specialties.

12. ABIM grants Board Certification in Internal Medicine to physicians who: 1) successfully complete three years of accredited, post-graduate training in internal medicine and its subspecialties; 2) meet the other requirements for certification; and 3) then pass a secure, proctored, computer-based examination in Internal Medicine.

13. Physicians who are first Board Certified in Internal Medicine, may then, with additional accredited training, become Board Certified by ABIM in one or more of the following subspecialties: Adolescent Medicine, Advanced Heart Failure & Transplant Cardiology, Cardiovascular Disease, Gastroenterology, Pulmonary Disease, Endocrinology, Diabetes & Metabolism, Hematology, Infectious Disease, Nephrology, Rheumatology, Medical Oncology, Critical Care Medicine, Geriatric Medicine, Clinical Cardiac Electrophysiology, Sports Medicine; Interventional Cardiology, Transplant Hepatology, Sleep Medicine, and Hospice and Palliative Medicine.

**The ABIM Certification Examination in Internal Medicine**

14. Board Certification in Internal Medicine requires that the physician pass the Examination, a secure, computer-based examination administered at testing centers nationwide and abroad. The Examination is administered in one day over approximately ten hours.

15. Candidates may select on which of the offered days they will sit for the Examination. In August 2009, candidates were given the opportunity to take the Examination in Puerto Rico on the following dates: August 11, 12, 14, 17, 18, 20, 24, 25, 26, and 27, 2009.

16. The ABIM Examinations are "secure" examinations, using confidential, copyrighted questions not disclosed to anyone except those taking the Examination and those involved in creating the Examination.

17. Advance knowledge by a candidate of the content of an Examination question, such as knowledge of question fact patterns, specific question subject matter and potential answers, provides the candidate an unearned advantage that subverts the integrity of the Examination and may permit unqualified physicians to achieve Board Certification.

18. ABIM repeatedly notifies candidates for Board Certification that the Examination is a copyrighted work owned by ABIM and may not be reproduced. For example, when a candidate registers to take the Examination, the candidate must agree to abide by the Policies and Procedures for Certification ("P&P"). The P&P expressly states that ABIM's Examinations are copyrighted and administered in secure testing centers by test administrators who are responsible for the integrity and security of the certification process.

19. In addition, at the time the Examination is administered, Candidates are required to read and electronically sign ABIM's Pledge of Honesty as displayed on their computer screens before they can begin the Examination. The Pledge of Honesty provides:

> I, [candidate's name], pledge that I will not give or receive aid in this Examination. I will not disclose, copy, or reproduce any portion of the material contained in this Examination. I pledge to comply with the instructions of proctors and with all rules of this Examination. I confirm that the information provided in my application to the Board is true and correct.
>
> . . . .
>
> I, [candidate's name], agree to the above statements and agree to be legally bound by the rules and policies of the American Board of Internal Medicine.

20. Following the Pledge of Honesty, the computer displays the following text: "By selecting the Next (N) button, you will be accepting these terms (You will now proceed to the Examination). If you do not accept these terms, raise your hand to notify the test administrator now. (You will not be permitted to proceed to the Examination)."

21. At the conclusion of the Examination, each candidate's computer screen displays the following message:

> **PLEASE NOTE:** In the Pledge of Honesty that you agreed to at the beginning of this Examination, you pledged that you "will not disclose, copy, or reproduce any portion of the material contained in this Examination."
>
> In fairness to all candidates, and to help ensure the integrity of the certification process, we want to remind everyone that sharing information about Examination content violates the confidentiality agreement all Certification and Maintenance of Certification candidates make with the ABIM in that Pledge of Honesty. As always, the ABIM will impose severe penalties on any candidate involved in efforts to provide specific Examination question content to others. These penalties may include invalidation of Examination results, prohibition from retaking the Examination, and revocation of certification.

22. The agreements set forth in paragraphs 18 through 21 above constitute an enforceable confidentiality agreement between each and every candidate for Board Certification

and ABIM to keep the contents of the Examination a secret. The confidentiality agreement that each candidate enters with ABIM is continuing and permanent.

**Development of the Certification Examination in Internal Medicine**

23. ABIM develops its Examination questions through a rigorous and costly process. A Test Committee ("Committee"), comprised of physicians from across the United States who are leaders in their fields of medicine and medical education, develops the Examination items. Members of the Committee meet in person two or three times a year to write and evaluate new questions. All Committee members sign agreements with ABIM confirming that ABIM is the copyright owner of all works contributed to or created by the member.

24. The Committee employs a "stepwise" procedure to create new questions. First, the Committee defines a general examination blueprint of areas within internal medicine to be tested. The Committee identifies cognitive tasks -- such as diagnosis or treatment -- and cognitive abilities -- such as clinical judgment -- to be tested for each area. Committee members write new questions and evaluate draft questions at a meeting in which the questions are read aloud, one by one. The Committee decides by consensus opinion to either: (1) accept the questions for further consideration, (2) revise them at the meeting, (3) assign them to individual test Committee members for extensive revision, or (4) reject them. Once a question is accepted, it is pre-tested (used in Examinations but not counted) to assure that it has appropriate measurement characteristics.

25. ABIM maintains an "item bank" of "live" questions from which it can select to create an Examination. Some Examination items are reused and appear on multiple Examinations, especially those that demonstrate repeatedly, through statistical analysis, to be an excellent assessment of the specific subject matter.

26.     ABIM must regularly update and re-pretest questions in the live pool to keep them current, and it must also retire questions from its item bank on an ongoing basis when it determines, based on evolving scientific developments in the field of internal medicine, that the questions are no longer current, relevant or fair and are no longer amenable to revision.

27.     ABIM strives to create or replace approximately 300 new Examination questions each year in order to replenish its item bank and to ensure that its Examination reflects current and evolving scientific developments in the field of internal medicine. ABIM must pretest more than 500 questions in order to be left with 300 usable questions at the end of the year that meet its rigorous criteria for inclusion as live Examination questions.

### ABIM's Copyrights in the Examinations

28.     The Examination is a work made for hire within the meaning of Section 101 of the Copyright Act, and as such was owned and controlled in the first instance by ABIM.

29.     ABIM has complied in all respects with the Copyright Act by making all necessary filings with the Register of Copyrights in order to secure the exclusive rights and privileges in and to the copyright in the Examination. ABIM registers each annual Examination with the United States Copyright Office, in accordance with the procedures for secure tests pursuant to 37 C.F.R. § 202.20. ABIM has received Certificates of Registration from the Register of Copyrights for its secure Examinations dating back to 1986 as follows:

| Date of Examination | Registration Number |
|---|---|
| 2009 | TX 7-116-588<br>TX 7-116-625 |
| 2008 | TX 7-116-687<br>TX 7-116-718 |
| 2007 | TX 6-871-423<br>TX 6-871-490 |
| 2006 | TX 6-448-309<br>TX 6-448-312<br>TX 6-448-313<br>TX 6-466-582 |
| 2005 | TX 6-294-231<br>TX 6-294-232<br>TX 6-297-408 |
| 2004 | TX 6-024-205<br>TX 6-024-211<br>TX 6-024-216<br>TX 6-024-217<br>TX 6-024-218<br>TX 6-103-387 |
| 2003 | TX 5-909-592<br>TX 5-909-593<br>TX 5-909-594<br>TX 5-909-595<br>TX 5-758-889<br>TX 5-977-745 |
| 2002 | TX 5-606-398<br>TX 5-609-628<br>TX 5-758-872 |
| 2001 | TX 5-460-006<br>TX 5-533-624<br>TX 5-609-812 |
| 2000 | TX 5-533-627<br>TX 5-541-436<br>TX 5-609-777 |

| | |
|---|---|
| 1999 | TX 5-541-448 |
| | TX 5-589-108 |
| 1998 | TX 5-556-061 |
| | TX 5-556-070 |
| 1997 | TX 5-556-060 |
| 1996 | TX 5-609-629 |
| 1995 | TX 4-117-619 |
| 1994 | TX 4-117-620 |
| 1993 | TX 3-807-867 |
| 1992 | TX 4-117-616 |
| 1991 | TX 3-315-723 |
| 1990 | TX 3-058-141 |
| 1989 | TX 2-744-671 |
| 1988 | TX 2-466-916 |
| 1987 | TX 2-212-160 |
| 1986 | TX 2-175-312 |

True and correct copies of the above Certificates of Registration and/or proof of Registration collectively are attached hereto as Exhibit A and are made a part hereof by reference.

30. ABIM never has authorized Dr. Salas or any third party to make any use or adaptation of ABIM's copyrighted, secure Examination questions.

**Dr. Salas' Unlawful Conduct**

31. In or about December 2008, Dr. Salas registered for the August 2009 Examination through the ABIM website and agreed to abide by ABIM's P&P for the Examination. Dr. Salas scheduled his ABIM Examination for August 20, 2009.

32. On or about November 5, 2008, Dr. Salas submitted an Order Form for attendance at a May 2009 "Unusual Board Review" course conducted by ABR. ABR identified its business address on the Order Form as 389 East Mount Pleasant Avenue, Livingston, New Jersey 07039-1514. Dr. Salas provided his name, address, phone number, and his e-mail address (jsalasmd@yahoo.com), as requested on the Order Form. Dr. Salas sent the Order Form through the United States mail to ABR's address in Livingston, New Jersey.

33. In December 2008, Dr. Salas sent multiple e-mails to ABR's proprietor, Rajender K. Arora, M.D. ("Dr. Arora"), concerning the date for the May 2009 review course. Dr. Salas sent those e-mails from his e-mail address (jsalasmd@yahoo.com) and signed those e-mails with his name.

34. From May 18-23, 2009, Dr. Salas attended ABR's six day test-prep course titled, "Unusual Board Review." Days following his attendance at the ABR course, Dr. Salas sent e-mails from his e-mail address (jsalasmd@yahoo.com) to Dr. Arora and signed those e-mails with his name.

35. Immediately upon the opening of the August 2009 Examination window in Puerto Rico, Dr. Salas began e-mailing Dr. Arora. However, this time, Dr. Salas sent all of his e-mails using a disguised email address – padrinojr@yahoo.com – under the pseudonym "Jimmy R." And, this time, Dr. Salas did not sign any of his e-mails.

36. On the evening of August 12, 2009, Dr. Salas sent an e-mail to Dr. Arora attaching seven pages of Dr. Salas' handwritten notes containing detailed content from the ABIM Examination given that same day. Dr. Salas stated:

> Dr. Arora as per our conversation a few minute[sic] ago. . .Here is the info. I will be sending you more info latter [sic] on when other colleges [sic] forward me more input.

A copy of the email from padrinojr@yahoo.com to Dr. Arora on August 12, 2009 is attached hereto as Exhibit B and is made a part hereof by reference.

37. Later that same evening, Dr. Salas sent another e-mail to Dr. Arora. This e-mail attached the same seven pages of handwritten notes detailing questions that had appeared on the ABIM Examination earlier that day, but added three new pages of handwritten notes containing more content from the ABIM Examination. Dr. Salas stated in the subject line, "Dr. Arora A more complete list I have added 20+ questions". A copy of this email from padrinojr@yahoo.com to Dr. Arora on August 12, 2009 is attached hereto as Exhibit C and is made a part hereof by reference.

38. The ten pages of handwritten notes that Dr. Salas e-mailed to Dr. Arora in New Jersey the evening of August 12, 2009, contained detailed questions from the ABIM Examination taken by a residency colleague of Dr. Salas that same day. Dr. Salas obtained the ABIM questions that he recorded in his handwritten notes during a lengthy telephone conversation with his colleague after his colleague had finished taking the ABIM Examination.

39. Dr. Salas' handwritten notes reveal specific, original, and memorable details of ABIM Examination questions, including descriptions of pictures shown on the Examination, wrong answer choices, and the specific states where patients reside and travel (e.g., "lady from Mississippi").

40. Before Dr. Salas sent his ten pages of handwritten notes to Dr. Arora in New Jersey containing specific, original and copyrighted information from the ABIM Examination given that day, upon information and belief, Dr. Salas telephoned Dr. Arora at his home office in Livingston, New Jersey to tell Dr. Arora about the ABIM Examination questions that Dr. Salas had obtained from his colleague and would be sending to Dr. Arora shortly.

41. The next day, August 13, 2009, Dr. Salas sent another e-mail to Dr. Arora. The subject line stated: "Fw: DON'T DON'T DON'T DON'T FORWARD". This e-mail contained nine attached files. The first attached file is titled "Board Questions" and the header on the first page of the document is "Board Questions 2007." A copy of the email from padrinojr@yahoo.com to Dr. Arora on August 13, 2009 is attached hereto as Exhibit D and is made a part hereof by reference.

42. The nine typewritten documents attached to Dr. Salas' August 13 e-mail to Dr. Arora contained a compilation of ABIM Examination questions that appear to have been collected over a series of years. The attachments indicate that they contain actual ABIM Examination questions with telltale statements such as: "Questions repeated on Board 2008" and "At this moment I was burned out . . . my answer was (A), but I am not sure".

43. After receiving Dr. Salas' multiple emails containing ABIM Examination content, Dr. Arora reciprocated by forwarding to Dr. Salas ABIM Examination questions that Dr. Arora recently had received from another ABR course attendee. On the afternoon of August 13, 2009, Dr. Arora forwarded an e-mail to padrinojr@yahoo.com with the subject line, "Fw: Some Q's." The cover e-mail from the course attendee to Dr. Arora stated:

> Here are a few that a friend from Florida that went to the crash course sent me. Also a lateral view of CXR of constrictive pericarditis that you can add to your presentations. If you have any new questions I can use before the exam I'll be happy to use them before the exam on Friday.

A copy of the e-mail from Dr. Arora to padrinojr@yahoo.com dated August 13, 2009 is attached hereto as Exhibit E and is made a part hereof by reference.

44. Three days later, Dr. Salas sent an e-mail to Dr. Arora with the subject line "164 question the one that repeated in every exam." The body of Dr. Salas' email was titled "ABIM 2009 Learning Points" and contained a list of specific testing points and ABIM Examination

questions that Dr. Salas had received by e-mail from a residency colleague earlier that day. A copy of the email from padrinojr@yahoo.com to Dr. Arora on August 16, 2009 is attached hereto as Exhibit F and is made a part hereof by reference.

45. Dr. Arora, who immediately understood the substance of what Dr. Salas had sent to him, replied a few hours later:

> AMAZING WORK!
>
> YOU WILL NOT HAVE ANY DIFFICULTY PASSING THIS EXAM.
>
> WHEN YOU COME BACK FROM EXAM, SIMPLY TICK THE ONES THAT WERE THERE IN YOUR EXAM – TO SEE WHAT PERCENTAGE OF THESE ARE REALLY THERE IN ONE CANDIDATE'S PORTION.
>
> DR. ARORA

A copy of Dr. Arora's e-mail to padrinojr@yahoo.com on August 16, 2009 is attached hereto as Exhibit F and is made a part hereof by reference.

46. Dr. Salas, through his disguised e-mail address padrinojr@yahoo.com, continued sending to Dr. Arora ABIM Examinations that he collected from residency colleagues up through August 19, 2009, the day before Dr. Salas sat for the Certifying Examination in Internal Medicine.

47. On August 20, 2009, Dr. Salas took the Examination. At the beginning of the Examination, Dr. Salas electronically signed ABIM's Pledge of Honesty.

48. Dr. Salas received a passing score on the Examination.

49. After discovering test questions on the ABR website that ABIM believed were copied from its Examination and subsequently conducting an investigation, ABIM obtained an ex parte seizure order in the action captioned American Board of Internal Medicine v. Arora, et. al.,

No. 2:09-05707 (E.D. Pa. 2009). ABIM later settled its claims against ABR. Pursuant to the settlement, ABR is forever prohibited from offering a live test-prep course.

50. In the December 2009 seizure at ABR's location in Livingston, New Jersey, ABIM obtained voluminous documents and computer files, including Dr. Arora's e-mails with his customers. ABIM spent months analyzing the documents and information obtained from ABR. ABIM diligently investigated the identity of the person who corresponded with Dr. Arora using the e-mail address padrinojr@yahoo.com but was unable to concretely match the e-mail address to Dr. Salas until January 2012.

## COUNT I

## COPYRIGHT INFRINGEMENT

51. ABIM incorporates by reference paragraphs 1 through 50 of its Complaint as though fully set forth herein.

52. The Examination is an original work copyrightable under 17 U.S.C. § 102. As lawful owner of the copyrights, ABIM is entitled to, *inter alia*, the exclusive rights to do and to authorize the reproduction, distribution, display of and the preparation of derivative works based on the copyrighted work. 17 U.S.C. § 106.

53. Defendant's unauthorized copying and distribution of and creation of derivative works based on the Examination in interstate commerce constitutes an actual infringement of ABIM's copyrights.

54. The foregoing conduct on the part of Defendant constitutes willful copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101, *et seq*.

55. By reason of the foregoing acts of copyright infringement, ABIM has sustained substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant as follows:

(a) Award the Plaintiff:

    (i) Compensatory damages in an amount to be proven at trial;

    (ii) Applicable statutory damages;

    (iii) The costs and disbursements of this action;

    (iv) An award of reasonable attorneys' fees; and

    (v) Such other relief as the Court deems just and proper.

**BALLARD SPAHR LLP**
A Pennsylvania Limited Liability Partnership

*/s/ Roberto A. Rivera-Soto*

Roberto A. Rivera-Soto
Hara K. Jacobs
210 Lake Drive East – Suite 200
Cherry Hill, New Jersey 08002-1163
Tel. (856) 761-3400
riverasotor@ballardspahr.com
jacobsh@ballardspahr.com

*Attorneys for Plaintiff*
*American Board of Internal Medicine*

**DATED:** October 17, 2014

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I, Roberto A. Rivera-Soto, hereby certify that the above matter is not, to the best of my knowledge, the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

**DATED:** October 17, 2014

*/s/ Roberto A. Rivera-Soto*
Roberto A. Rivera-Soto